IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**THALYSON DIEGO AUGUSTO SANTOS**
519 Thorn Ridge Cv,
Memphis, TN, 38117

*Plaintiff,*

**ALEJANDRO MAYORKAS, SECRETARY, U.S. DEPT. OF HOMELAND SECURITY**
C/O Office of The General Counsel
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

*AND*

**UR MENDOZA JADDOU, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES**
C/O Office of the Chief Counsel
5900 Capital Gateway Dr., Mail Stop 2120
Camp Springs, MD 20588

*AND*

**CONNIE NOLAN, ASSOCIATE DIRECTOR, SERVICE CENTER OPERATIONS DIRECTORATE,**
C/O Office of Chief Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, Md 20588-0009

*Defendants,*

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND COMPLAINT UNDER THE ADMINISTRATIVE PROCEDURE ACT AND DUE PROCESS**

Comes now, Mr. Thalyson Diego Augusto Santos (hereinafter "Mr. Santos", "Lead Plaintiff"), by and through undersigned counsel to file this civil action seeking declaratory relief and review of agency action under the Administrative Procedure Act based on Defendants' unjust denial of Mr. Santos' and his derivative's I-485 Applications to Adjust Status.

Plaintiff states therefore the following in support of this action:

## PARTIES

1. Plaintiff, Mr. Santos, is the beneficiary of an approved I-140 Immigrant Petition for Alien Worker, to which he classified as a member of profession with an advanced degree or, of exceptional ability. Based on this underlying petition, Plaintiff applied for a Form I-485, Application to Register Permanent Residence or Adjust Status, which was denied on April 23, 2020, as we will elaborate on in the foregoing.
2. Defendant, Alejandro Mayorkas, is the duly appointed Secretary of the Dept. of Homeland Security. In the official capacity as the Secretary, he oversees the United States Department of Homeland Security (hereafter "DHS"), which includes the sub-agency, USCIS, and verifies that the Immigration and Nationality Act (hereafter "INA") regulations are being implemented. He is further authorized to delegate certain powers and authority to subordinate employees of USCIS.

3. Defendant, Ur Mendoza Jaddou, is duly appointed as the Director of USCIS, with the duty to oversee the adjudication of immigration benefits under the Immigration and Nationality Act, 8 U.S.C. §1101 et seq. This duty includes completing proceedings within a reasonable time, including adjudicating EB-2 immigrant visa petitions and adjustment of status applications.
4. Defendant, Connie Nolan, is sued in her official capacity as the Associate Director for the USCIS Service Center Operations Directorate. Ms. Nolan's Service Center Operations Directorate provides services for persons seeking immigration benefits and provides decisions to individuals requesting immigration benefits, including the Memphis - Tennessee Office, where Plaintiff's I-485 application for adjustment of status were processed and denied.

**JURISDICTION AND VENUE**

5. Pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 701 and 702, and 28 U.S.C. § 2201, et seq. jurisdiction here is proper and relief is requested under these statutes.
6. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 5 U.S.C. § 555(b) & § 706(1), the Administrative Procedure Act; 8 U.S.C. §1329, Immigration & Naturalization Act, and 28 U.S.C. § 1361, which gives the district courts *"original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States, or any agency therefor to perform a duty owed to the Plaintiff."*

7. Furthermore, the Declaratory Judgment Act, 28 U.S.C. 2201, provides that "*in a case of actual controversy within its jurisdiction … any court of the U.S., upon filing of an appropriate pleading, may declare the rights of any interested party seeking such declaration, whether or not further relief could be sought.*"

8. 28 U.S.C. § 1391(e), as amended, provides that venue for suits against the U.S., a federal agency, or a federal official acting in his or her official capacity, can be brought in any one of the three judicial districts where: 1) where a defendant resides; 2) where a substantial part of the events or omissions giving rise to the claim occurred; or 3) where the plaintiff resides if no real property is involved.

9. Venue is proper in this District because this is an action against officers and agencies of the U.S. in their official capacities, brought in this district where Defendants reside.

10. Defendant, Alejandro Mayorkas is sued in his official capacity as Secretary of U.S. Dept. of Homeland Security, a U.S. federal agency. Also, Defendant, Ur Mendoza Jaddou is sued in her official capacity as the Director of USCIS, a federal district and resident in that district. Finally, defendant, Connie Nolan is sued in her official capacity as Acting Director for the USCIS Service Center Operations Directorate and, a U.S. federal agency.

11. Furthermore, because national policy on the adjudication of petitions and applications for immigration benefits – including immigrant visa petitions and

adjustment of status is devised by the U.S. Dept. of Homeland Security and implemented by USCIS, venue is proper in this district.

12. Therefore, under 28 U.S.C. § 1391(e)(2) & (3), venue is proper in the U.S. District of Columbia.

## STATUTORY AND REGULATORY BACKGROUND

13. The INA provides for immigrant visas to be made available each year to some foreign workers who fall within the employment-based categories, including in the EB-2 preference category. 8 C.F.R. § 204.5.

14. This visa category allows a foreign professional who is a member of the professions holding an advanced degree or an alien of exceptional ability in the sciences, arts, or business., to be employed by U.S. companies. 8 C.F.R. § 204.5(k)(1).

15. The status of a foreign national who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed. 8 U.S.C. § 1255(a).

## FACTUAL BACKGROUND

16. On September 26, 2016, Mr. Santos entered the United States on a B2 Visitor Visa, which permitted him to remain in the country with visitor status until March 25, 2017. Prior to the expiration of his visitor status, on March 15, 2017, Mr. Santos submitted an I-539 Application to Change Nonimmigrant Status (EAC1790089014). This application was approved, granting him F1 student status effective November 6, 2017. Subsequently, Mr. Santos commenced a master's degree program in Bible/Biblical Studies at the South Florida Bible College and Theological Seminary located in Deerfield Beach, Florida.

17. On January 30, 2018, Mr. Santos's F1 student status was terminated while he was in the process of transferring to Strayer University in Memphis, Tennessee, where he had relocated. Prior to this termination, on January 24, 2018, Mr. Santos sought legal counsel from an immigration attorney, Mr. David Jones of Fisher & Phillips LLP in Memphis, Tennessee. Mr. Jones advised Mr. Santos to file for an EB-2 visa along with an application to adjust status.

18. Mr. Santos initiated his case with Mr. Jones on January 24, 2018. At the time, Plaintiff was aware of 8 U.S.C. §1255 (k), which provides an exemption for certain employment-based adjustment of status applicants, allowing them to adjust status despite having committed certain immigration violations, such as failing to maintain lawful status, engaging in unauthorized employment, or

violating the terms of their admission, as long as these violations occurred for an aggregate period of no more than 180 days following their most recent lawful admission. Plaintiff trusted counsel's best judgment.

19. However, when considering the deadline for filing Plaintiff's previous attorney not only considered the 180 days provision, but also the 60-days grace period given to F-1 students who have completed their course of study. This provision allows a 60-day grace period to prepare for departure from the United States or to transfer to another SEVP-certified school. During this grace period, the student is considered to be maintaining nonimmigrant status and may apply for a change to another nonimmigrant or immigrant status.

20. Thus, instead of considering the 180 days for the filing of the I-140 petition, the previous attorney considered 240 days. The filing of the Plaintiff's I-140 petition and the I-485 application was delayed until September 28, 2018, with a priority date of October 1, 2018 (Receipt #LIN1990017969). This initial EB-2 petition was denied on September 19, 2019, leading to the subsequent denial of the I-485 application on April 21, 2020 (Receipt #LIN1990017970).

21. Before the denial of the I-485 application, Mr. Santos was advised by his attorney to initiate a new EB-2 case. This new case was filed on February 3, 2020 (Receipt #LIN2090207734), along with a new I-485 application (Receipt #LIN2090207735). Concurrently, a Labor Certification process was initiated with the Department of Labor (ETA Case #A-20051-21266). Following the

certification of the ETA-9089, a new I-140 petition was filed on behalf of Mr. Santos (Case #LIN2027150589) on August 5, 2020. This petition was approved under section 203(b)(c) on November 30, 2020.

22. Subsequently, a withdrawal request for the previous I-140 (Case #LIN2090207734) and a transfer request for the pending I-485 (Case #LIN2090207735) were submitted to USCIS on January 8, 2021.

23. On January 3, 2023, the transferred I-485 Adjustment of Status Application was denied as USCIS stated that "*[a] review of your application and USCIS records shows that after your last admission to the United States as a B-2 nonimmigrant on September 28, 2016, you failed to maintain, continuously, a lawful status or otherwise violated the terms and conditions of your admission. Specifically, the record shows that you did not maintain lawful nonimmigrant status in the United States after January 30, 2018, when your F-1 program was terminated*".

24. In an attempt to revert this error in judgment, Plaintiff filed an I-290B Notice of Appeal or Motion on June 15, 2023 (Case #IOE0920083708). Out of an abundance of caution, Mr. Santos also filed a new I-485 Application to Register Permanent Resident or Adjustment of Status on March 31, 2023 (Case #MSC2390424184).

25. Despite these efforts, and despite repeatedly explaining the errors made by Plaintiff's previous attorney, Defendants used an abuse of discretion, and the I-290B Motion was denied on June 15, 2024 and the final I-485 Application was

denied on January 31, 2024, thereby denying Mr. Santos's adjustment of status application.

26. The negligence of the attorney in Mr. Santos's first case significantly impacted his immigration status. Despite Mr. Santos's timely efforts to adjust his status, the attorney's delay in filing the I-140 petition and I-485 application until September 28, 2018, resulted in the denial of his initial EB-2 petition and subsequent I-485 application. This delay and the failure to effectively manage the case deprived Mr. Santos of the opportunity to secure a valid immigration status. Had the attorney acted with due diligence and competence, Mr. Santos would likely have maintained his eligibility for adjustment of status, thereby securing a valid immigration status in the United States.

27. As a result, Plaintiff's adjustment of status application remains denied and he is in danger of continuing to accrue unlawful presence in the U.S.

## EXHAUSTION OF REMEDIES

28. The Plaintiff has pursued all available administrative remedies concerning his immigration status.

29. The Supreme Court has ruled that in cases seeking judicial review pursuant to the APA, a plaintiff is not required to exhaust non-mandatory administrative remedies. *Darby v. Cisneros*, 509 U.S. 137, 153-54, 113 S. Ct. 2539, 125 L.Ed.2d 113 (1993).

30. Neither the Act nor U.S. Dept. of Homeland Security's regulations via 8 C.F.R. § 103.3(a) require administrative appeal of the denial.

31. As already mentioned, Plaintiff has refiled the Form I-485, Application to Register Permanent Residence or Adjust Status and filed an I-290B motion for their denied adjustment of status applications with USCIS, but Defendants later dismissed the arguments presented.

32. As such, Plaintiff's denied adjustment of status application is a final decision.

33. Under 5 U.S.C. §§ 702, 704, Plaintiff and his family have suffered a "legal wrong" and have been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

34. Given the denial of the final I-485 applications, and the exhaustion of all administrative avenues, the petitioner is now seeking judicial review. The exhaustion requirement has been met to the extent possible, and any further administrative actions would likely be futile or inadequate in providing relief.

## CLAIMS FOR RELIEF:

### I. ADMINISTRATIVE PROCEDURE ACT VIOLATION

35. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

36. The denials of the I-485 adjustment of status are agency actions under the Administrative Protective Act ("APA").

37. Pursuant to 5 U.S.C. § 702, the APA governs the review of agency action where a person has suffered a "legal wrong" or has been "adversely affected or aggrieved by agency action.

38. The denials of Plaintiffs' I-485 applications are improper and reviewable under 5 U.S.C. § 702.

39. In an APA suit, "*the court's review is largely limited to the contents of the administrative record … the court thus sits as an appellate tribunal to determine whether as a matter of law, the record supports the agency's decision.*" [*Khedkar v. USCIS*, 2021 U.S. Dist. LEXIS 146437, *7 (D.D.C. 2021)].

40. Moreover, 5 U.S.C. § 706(2)(A) states that "*the reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.*"

41. Under this standard of review, the agency's decision will be reversed if it "*entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise*" [*DHS v. Regents of the Univ. of Cal*, 140 S. Ct. 1891, 1913 (2020)].

42. The agency's decision to deny Plaintiffs' I-485, Application to Register Permanent Residence or Adjust Status should be reversed because USCIS failed to adequately consider that the delay to file the I-485 Application was due to the lack of due diligence on behalf of the Plaintiff's previous attorney.

43. Plaintiff's application was denied solely based on the ineffective assistance of counsel, and he is in danger of continuing to accrue unlawful presence in the U.S.

44. Within the I-485 application's RFE response, as well as in the I-290B motion for his denied adjustment of status applications with USCIS, Plaintiff submitted evidence that corroborates that his application was not delayed for his own inaction.

45. Defendants' decision will not deprive this Court of jurisdiction because Plaintiffs are not asking the Court to second guess USCIS' decision to deny the I-485 Application for adjustment of status. Instead, the Plaintiff requests to be granted an opportunity to be heard and that USCIS can reconsider its decision to deny Plaintiffs' I-485 application because his previous representation was careless.

46. The question of whether USCIS must give Plaintiffs that opportunity is a purely legal question over which this Court retains jurisdiction.

47. The U.S. District Court in *Barchart.com v. Koumans*, held that the decision to deny the non-immigrant petition was arbitrary and capricious because the agency failed to consider and acknowledge a key piece of evidence - the expert opinion letter. *Barchart.com v. Koumans*, 2020 U.S. Dist. LEXIS 27974 (D.D.C. 2020). See also *Butte Cty.,* 613 F.3d at 194 ("*[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of [5 U.S.C.] § 706.*"); Comcast Corp. v. FCC, 579 F.3d 1, 8 (D.C. Cir. 2009) (holding that an

agency rule was arbitrary and capricious when the agency "*failed to* '*examine the relevant data and articulate a satisfactory explanation for its action*'" (alterations in original) [quoting *Fresno Mobile Radio v. FCC*, 165 F.3d 965, 168 (D.C. Cir 1999)].

48. Plaintiff has an approved I-140 Petition and did maintain his status as a student until he hired an Attorney to file for his adjustment of status. By the sole mistake of his attorney, he missed the deadline and used more than the permissible 180 days between his last valid status and the adjustment of status application. USCIS's failure to adequately consider the facts and evidence presented shows that their decision is arbitrary, capricious, and an abuse of discretion, and it should be held unlawful and set aside, under 5 U.S.C. § 706(2)(A) and (D).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL DISREGARDED

49. USCIS's Policy Manual Chapter 4 - Status and Nonimmigrant Visa Violations states that "*[a]n applicant's failure to continuously maintain lawful immigration status or violation of nonimmigrant status may be excused only for the particular period of time under consideration if the applicant's failure or violation was through no fault of his or her own or for technical reasons.*" It further states that "*[t]his exception generally does not apply to most claims that an applicant's attorney or representative provided ineffective counsel or failed to file an application or other documents to USCIS on the applicant's behalf The applicant and the attorney or representative are both responsible for complying*

*with all applicable USCIS filing requirements and official correspondence or requests for information, and the applicant has control over the actions of the representative.*"

50. However, precedent suggests that ineffective assistance of counsel can be grounds to challenge USCIS denials resulting from missed deadlines. In *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), the Board of Immigration Appeals ruled that the noncitizen must establish that he or she was prejudiced by the action or inaction of counsel.

51. Recent case law supports this notion, holding that an applicant cannot be held personally responsible for failing to maintain lawful status due to their attorney's mistakes. In *Peters v. Barr*, 954 F.3d 1238 (9th Cir. 2020), the court held that "[a]n applicant cannot be regarded as personally *"responsible for failing to maintain lawful status when that failure occurs due to a mistake on her lawyer's part. An applicant who relies on the assistance of counsel to maintain lawful status will usually have no basis to question the soundness of the advice she receives from her lawyer.* See *Pleitez-Lopez v. Barr,* 935 F.3d 716, 720 (9th Cir. 2019); *Monjaraz-Munoz v. INS,* 327 F.3d 892, 897 (9th Cir. 2003). *If the advice turns out to be erroneous and results in the applicant's failure to maintain lawful status, no one using the term "fault" in its ordinary sense would say that the applicant herself was to blame. If blame were assigned it would be placed on the attorney, whose job it is to know the intricacies of immigration law."*

52. Plaintiff seeks a declaratory judgment recognizing that the denial of his I-485 Adjustment of Status Application was due to the ineffective assistance of his

previous attorney, who failed to meet a critical filing deadline. This failure constitutes a violation of the plaintiff's right to competent legal representation, as established in *Matter of Lozada* and subsequent case law, which recognizes ineffective assistance of counsel as a basis for reopening immigration proceedings.

## III. VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS

53. Plaintiff realleges and incorporates the referenced paragraphs above.

54. The Due Process Clause applies to all individuals in the U.S., regardless of their status, as established in *Mathews v. Diaz* 426 U.S. 67, 77 (1975) and *Wong Wing v. United States* 163 U.S. 228, 238 (1896). This ensures that even non-citizens are entitled to due process protections.

55. Due process protections are triggered when a "liberty" or "property" interest is at stake, as outlined in *Board of Regents v. Roth*. The right to work and live in the U.S. is a protected liberty interest, as recognized in *McNary v. Haitian Refugee Ctr.* 498 U.S. 479, 491 (1991).

56. The Supreme Court has held that procedural due process includes the right to a fair process in applying for benefits, even if they are discretionary, as seen in *INS v. St. Cyr*, 533 U.S. 289, 307-08 (2001), "*even if a benefit is ultimately discretionary, the individual may have a non-discretionary right protected by procedural due process to apply for the benefit and have a fundamentally fair review of such application.*".

57. Even if no liberty or property interest is found, the denial of relief can still be challenged as a procedural due process violation, an equal protection violation, or an APA violation, as supported by *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017) and *Judulang v. Holder*, 565 U.S. 42, 55 (2011).

58. The plaintiff has constitutional standing by demonstrating an injury in fact, traceability to the defendant's conduct, and the likelihood of redress through a favorable decision, as established in *Khedkar v. U.S. Citizenship & Immigr. Servs.*, 552 F.Supp.3d 1 (D. D.C. 2021); and *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000).

59. The plaintiff's harm was directly caused by his previous attorney's errors, which led to the denial of status adjustment. USCIS's failure to adequately consider these errors compounded the due process violation.

60. Therefore, the plaintiff contends that the Defendants erroneously failed to acknowledge his eligibility to adjust status, resulting in irreparable harm. The court should grant relief to rectify this due process violation.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter judgment on their behalf consisting of the following:

(1) Assume jurisdiction and proper venue over this action.

(2) Order USCIS to reopen, make the necessary corrections to Plaintiffs cases and properly adjudicate the I-485 Application to Register Permanent Residence or Adjust Status, (USCIS Receipts #LIN2090207735 and/or #MSC2390424184).

(3) Issue an order declaring Defendants' denials of Mr. Santos' and his family's I-485 applications are violative of the INA's regulations and Administrative Procedure Act, erroneous as a matter of law and fact, and not otherwise in accordance with the law, and violative of procedural due process.

(4) Order USCIS to ultimately approve Plaintiffs'I-485 application for adjustment of status as no other issues of eligibility are pending agency review.

(5) Award Plaintiff reasonable costs and attorney's fees under the Equal Access to Justice Act, 22 U.S.C. § 2412; and

(6) Award such further relief as the Court deems just, necessary, or proper.

January 9, 2025

Respectfully submitted,

/s/ Daniel Joseph Jones

Daniel Joseph Jones
DC Bar No. 1035028
Law Office of D. J. Jones PLLC
2101 L St NW, Suite 300
Washington, DC 20037
(202) 750-4637
joe@djjon.es

Marcelo Gondim
CA Bar No. 271302
Gondim Law Corp.
1880 Century Park E, Suite 400
Los Angeles, CA 90067
Phone: (323) 282-7770
Email: Court@gondim-law.com

Counsel for Plaintiffs