**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THALYSON DIEGO AUGUSTO SANTOS,<br>Plaintiff,<br>v.<br>MARKWAYNE MULLIN, Secretary of Homeland Security, et al.<br>Defendants. | Civil Action No. 25-0062 (ABJ) |

**ORDER**

This complaint arises from plaintiff Thalyson Diego Augusto Santos's efforts to obtain lawful permanent resident status after his F-1 student status was terminated in January 2018 and his initial immigration filings were delayed based on advice from prior counsel. Although United States Citizenship and Immigration Services ("USCIS") subsequently approved a new EB-2 petition, it denied plaintiff's I-485 applications on the ground that he had failed to continuously maintain lawful status following the termination of his F-1 status. Plaintiff contends that USCIS improperly disregarded his prior counsel's error and asserts claims under the Administrative Procedure Act ("APA"), the doctrine of ineffective assistance of counsel, and the Due Process Clause. Plaintiff seeks an order requiring USCIS to reopen and approve his I-485 application, as well as declaratory relief and attorney's fees and costs. Defendants have moved to transfer the action to the Western District of Tennessee and to dismiss it for improper venue and failure to state a claim. For the reasons explained herein, the motion to transfer is hereby **GRANTED**.

**BACKGROUND AND PROCEDURAL HISTORY**

According to the complaint, plaintiff Santos entered the United States on September 26, 2016, on a B-2 visitor visa, "permitt[ing] him to remain in the country with visitor status until March 25, 2017." Compl. ¶ 16. On March 15, 2017, plaintiff filed an I-539 application to change his nonimmigrant status. Compl. ¶ 16. USCIS approved the application, "granting [plaintiff F-1] student status effective November 6, 2017," which permitted him to enroll in "a master's degree program in Bible/Biblical Studies at the South Florida Bible College and Theological Seminary located in Deerfield Beach, Florida." Compl. ¶ 16.

USCIS terminated plaintiff's F-1 student status on January 30, 2018, "while [plaintiff] was in the process of transferring to Strayer University in Memphis, Tennessee, where he had relocated." Compl. ¶ 17. During this period, plaintiff sought advice from David Jones, an immigration attorney in Memphis, who "advised [plaintiff] to file for an EB-2 visa along with an [I-485] application to adjust status." Compl. ¶ 17. Jones believed that plaintiff had 240 days following his most recent lawful admission, rather than the 180 days prescribed by 8

U.S.C.§ 1255(k), to file the necessary I-140 petition and I-485 application. Compl. ¶¶ 18–20.[1] According to plaintiff, "when considering the deadline for filing [Mr. Jones] not only considered the 180 days provision, but also the 60-days grace period given to F-1 students who have completed their course of study."[2] Compl. ¶ 19. In light of that advice, "[t]he filing of the [p]laintiff's I-140 petition and the I-485 application was delayed until September 28, 2018." Compl. ¶ 20. USCIS denied the EB-2 petition on September 19, 2019, and the I-485 application on April 21, 2020. Compl. ¶ 20.

---

1 Section 1255(k) provides:

> An alien who is eligible to receive an immigrant visa under paragraph (1), (2), (3), or (5) of section 1153(b) of this title (or, in the case of an alien who is an immigrant described in section 1101(a)(27)(C) of this title, under section 1153(b)(4) of this title) may adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2), (c)(7), and (c)(8), if—
>
> (1) the alien, on the date of filing an application for adjustment of status, is present in the United States pursuant to a lawful admission;
>
> (2) the alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days—
>
> (A) failed to maintain, continuously, a lawful status;
>
> (B) engaged in unauthorized employment; or
>
> (C) otherwise violated the terms and conditions of the alien's admission.

8 U.S.C. § 1255.

2 *See* 8 C.F.R. § 214.2 ("An F-1 student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph (f)(8) of this section.").

On February 3, 2020, before USCIS denied the first I-485 application, plaintiff filed a new EB-2 case and I-485 application and applied for permanent employment certification with the Department of Labor ("DOL"). Compl. ¶ 21. After that agency approved the application, plaintiff filed a new I-140 petition on August 5, 2020. Compl. ¶ 21. USCIS approved the I-140 petition on November 30, 2020. Compl. ¶ 21. On January 8, 2021, plaintiff submitted a withdrawal request for the prior I-140 case and a transfer request for the pending I-485 case. Compl. ¶ 22. USCIS denied the transferred I-485 adjustment-of-status application on January 3, 2023, explaining:

> [A] review of your application and USCIS records shows that after your last admission to the United States as a B-2 nonimmigrant on September 28, 2016,[3] you failed to maintain, continuously, a lawful status or otherwise violated the terms and conditions of your admission. Specifically, the record shows that you did not maintain lawful nonimmigrant status in the United States after January 30, 2018, when your F-1 program was terminated.

Compl. ¶ 23.

In response, plaintiff filed an I-290B notice of appeal on June 15, 2023, and a new I-485 application to adjust status on March 31, 2023. Compl. ¶ 24. USCIS denied the I-290B motion on June 15, 2024, and the final I-485 application on January 31, 2024. Compl. ¶ 25. Plaintiff contends that his I-485 applications were "processed and denied" by the USCIS Memphis Field Office. Compl. ¶ 4.

On January 9, 2025, plaintiff filed a three count complaint against Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); Joseph Edlow, Director of USCIS; and Carrie M. Selby, Acting Associate Director of the Service Center Operations

---

3 Plaintiff, in his complaint, alleges he was admitted to the United States on September 26, 2018, instead of September 28, 2016. Compl. ¶ 16. This discrepancy does not weigh on the resolution of this motion.

Directorate ("SCOPS") for USCIS.[4] Count One alleges that USCIS's denials of plaintiff's I-485 applications violate the APA, 5 U.S.C. §§ 702, 706(2), because "USCIS failed to adequately consider that the delay to file the I-485 [a]pplication was due to the lack of due diligence on behalf of the [p]laintiff's previous attorney." Compl. ¶¶ 35–48. Count Two, entitled "Ineffective Assistance of Counsel Disregarded," also relies upon "ineffective assistance of [prior] counsel as a basis for reopening immigration proceedings." Compl. ¶¶ 49–52. Count Three alleges that USCIS's denials are a "[v]iolation of [p]laintiff's [d]ue [p]rocess [r]ights" under the United States Constitution, again because USCIS failed to adequately consider prior counsel's mistake. Compl. ¶¶ 53–60. Plaintiff asks the Court to order USCIS to reopen and ultimately approve his I-485 application, declare its denials "erroneous as a matter of law and fact," and award plaintiff reasonable costs and attorney's fees. Compl. at 16–17.

On March 24, 2025, defendants moved to transfer this action to the Western District of Tennessee, where plaintiff allegedly resides, and to dismiss the case under Federal Rules of Civil Procedure 12(b)(3) for improper venue and 12(b)(6) for failure to state a claim upon which relief can be granted. Mot. to Transfer [Dkt. # 9] ("Mot.") at 1.[5] The motion has been fully briefed. Mem. in Opp. to Mot. to Dismiss [Dkt. # 11] ("Pl.'s Opp."); Reply to Opp. to Mot. to Dismiss [Dkt. # 12] ("Defs.' Reply").

---

4 This suit was originally brought against Alejandro Mayorkas, former DHS Secretary, Ur Mendoza Jaddou, former USCIS Director, and Connie Nolan, former Associate Director for the SCOPS. Under Federal Rule of Civil Procedure 25(d), current DHS Secretary Mullin, USCIS Director Edlow, and SCOPS Acting Associate Director Selby were substituted as defendants.

5 Defendants' motion includes both the motion to dismiss and motion to transfer. Defendants' filing at Dkt. # 10, labeled "Motion to Dismiss" is an exact copy of defendants' motion at Dkt. # 9. Plaintiff's reply and defendants' surreply similarly address both motions.

## STANDARD OF REVIEW

In a civil action in which a defendant is an officer of the United States acting in their official capacity, venue is proper in any judicial district where (1) "a defendant in the action resides"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Pursuant to 28 U.S.C. § 1406(a), "the district court of a district in which is filed a case laying venue in the wrong . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Even if venue is proper, though, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The court has "broad discretion" to transfer a case under section 1404. *In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983). A defendant, as the moving party, bears the burden of establishing that transfer is proper. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

The decision to transfer requires an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The threshold question under section 1404(a) is whether the action "might have been brought" in the transferee district. If the prerequisites to transferability are satisfied, the court must then go on to balance case-specific private interest and public interest factors to determine whether transfer is appropriate. *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). Private interest considerations include:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants;
>
> (2) the defendants' choice of forum;

> (3) whether the claim arose elsewhere;
>
> (4) the convenience of the parties;
>
> (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
>
> (6) the ease of access to sources of proof.

*Trout Unltd. v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). The public interest considerations include:

> (1) the transferee court's familiarity with the governing laws;
>
> (2) the relative congestion of the calendars of the potential transferee and transferor courts; and
>
> (3) the local interest in deciding local controversies at home.

*Id.*

## ANALYSIS

### I. Venue is technically valid in this district since plaintiff has sued the Secretary of Homeland Security.

Plaintiff maintains that venue is proper in the District of Columbia because defendants reside in this district and because a substantial part of the events or omissions giving rise to plaintiff's claims occurred here. Pl.'s Opp. at 9–11. He is correct about that as to one defendant but not others.

When determining the residence of federal officials for venue purposes, "[w]hat controls is the official residence of the federal defendant where the official duties are performed and not the personal residence of an individual who is a defendant." *Lamont v. Haig*, 590 F.2d 1124, 1128 n.19 (D.C. Cir. 1978); *see also Rabelo v. Noem*, 2025 WL 3171005, at *2 n.4 (D.D.C. Nov. 13, 2025). Defendants point out, and other courts in this district have recognized, that "USCIS is no longer headquartered in this District, having moved its headquarters to Camp Springs, Maryland

in 2020." Mot. at 2; *see also Farroukh v. U.S. Citizenship & Immigr. Servs.*, 2023 WL 7017758, at *2 (D.D.C. Oct. 25, 2023) (holding that "USCIS does not 'reside' in this District as it is headquartered in Camp Springs, Maryland" and transferring the case to the District of Maryland); *Bahena v. Renaud*, 2021 WL 1820232, at *1–2 (D.D.C. May 6, 2021) (noting that USCIS is headquartered in Maryland, not D.C., and transferring the case to the district "where [p]laintiffs reside and where the immigration application at issue in this case remains pending"); *Melnattur v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 3722732, at *3 n.4 (D.D.C. Aug. 23, 2021) (recognizing the same and transferring suit to the district in which the plaintiff's immigration case was processed).

That leaves the Secretary of Homeland Security. Unlike USCIS, DHS remains headquartered in this district. *See DHS Mailing Address*, (Jan. 21, 2025), https://perma.cc/J47X-BQNP. Venue, on the face of section 1391(e)(1), is therefore proper in this district as to Secretary Mullin. But the D.C. Circuit has long recognized, and defendants argue, that "[c]ourts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

One can hardly conclude that a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this district. Plaintiff alleges that his applications were "processed and denied" by the USCIS Memphis Field Office.[6] Compl. ¶ 4. He received advice from his prior attorney in Memphis, and the universities in question are in Tennessee and Florida. Compl. ¶¶ 16–

6 Defendants state that only one denial occurred at the Memphis Field Office, while the other occurred at USCIS' Nebraska Service Center. Mot. at 1. Regardless, neither occurred in the District of Columbia.

17. And while "venue may lie in the District of Columbia when the plaintiff 'assert[s] a general, broad-based challenge to immigration policies or regulations[,]'" *MVP Sports, Inc. v. Cissna*, 2020 WL 5816239, at *2 (D.D.C. Sept. 30, 2020), quoting *Abusadeh v. Chertoff*, 2007 WL 2111036, at *6 (D.D.C. July 23, 2007), plaintiff does nothing of the sort here. Instead, he challenges the denials of his specific applications for an idiosyncratic reason: a timing error made by his prior counsel. Defendants Edlow and Selby do not anchor venue in this district, nor do any acts or omissions relevant to this action.

Ordinarily, though, this principle is "considered by courts in determining whether to transfer an action pursuant to 28 U.S.C. § 1404(a), and not the sole principle relied upon in finding a lack of venue in the District of Columbia under Federal Rule of Civil Procedure 12(b)(3)." *Abusadeh*, 2007 WL 2111036, at *5 (finding venue proper in the District of Columbia as to the Secretary of Homeland Security but transferring the case under section 1404(a)); *see also Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 304 (D.D.C. 2017); *Roh v. U.S. Citizenship & Immigr. Servs.*, 2021 WL 5050071, at *1 (D.D.C. Nov. 1, 2021). *But see MVP Sports*, 2020 WL 5816239, at *2 (finding venue improper in this district because "the named agency official was not personally involved in the challenged decision") (internal quotation marks omitted). The Court will therefore consider the Secretary's tenuous connection to the case when evaluating the factors relevant to motion to transfer under section 1404(a), but it will not dismiss the case on the grounds that venue was improper under section 1391(e)(1).

**II. The interests of justice favor transfer to the Western District of Tennessee.**

Even if venue is technically proper in the District of Columbia, the interests of justice favor transfer to the Western District of Tennessee, under 28 U.S.C. § 1404(a). As a threshold matter, the Court finds that venue is proper in that district pursuant to 28 U.S.C. § 1391(e)(1). Plaintiff

resides in the Western District of Tennessee, Compl. at 1, and a substantial part of the events or omissions giving rise to his claims occurred there. In particular, at least one, if not both, of plaintiff's I-485 applications were processed and denied in the Memphis Field Office. Compl. ¶ 4.

**A. Private interest factors favor transfer**

Courts in this district have afforded the first private interest factor, the plaintiff's choice of forum, "minimal weight" when the forum "is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to plaintiff's home forum." *Bourdon*, 235 F. Supp. 3d at 305, citing *Nat'l Ass'n of Home Builders v. U.S. Env't Prot. Agency*, 675 F. Supp. 2d 173, 179–80 (D.D.C. 2009); *see also Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 331 (D.D.C. 2020), quoting *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) ("When the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum, transfer is favored."). Although this factor weighs nominally against transfer, the remaining private-interest factors favor transfer.

"Transfer is favored when defendants' preferred forum is also the plaintiff's home forum." *Wolfram Alpha*, 490 F. Supp. 3d at 332, citing *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018). Here, defendants' preferred forum is not only plaintiff's home forum but also the district where his claims arose. Compl. ¶ 4. For that reason, "[c]ases challenging the actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices for this reason." *Bourdon*, 235 F. Supp. 3d at 305, citing *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009). Plaintiff alleges that the decision-making processes and policies that led to his denial "emanate[d]" from DHS headquarters, Pl.'s Opp. at 9, but he has alleged no facts to support this conclusory assertion, which is at odds with the regulatory

regime. *See* 8 C.F.R. § 100.1 (delegating authority under the Immigration and Naturalization Act to USCIS).

The final three private interest factors, all of which concern convenience, also favor transfer. Plaintiff "cannot reasonably claim to be inconvenienced by litigating in [his] home forum." *Aishat*, 288 F. Supp. 3d at 270, quoting *Tower Labs., Ltd. v. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018). Witnesses and other sources of proof are also more likely to be located in the Western District of Tennessee. They include plaintiff's prior counsel, Mr. Jones; staff and records from the USCIS Memphis Field Office; personnel and records from Strayer University; and any of plaintiff's family members, friends, or colleagues. Although electronic access to records and the absence of any identified witnesses who would be unavailable in this district lessen the weight of these considerations,[7] they nevertheless weigh, at least to some degree, in favor of transfer.

**B. Public interest factors favor transfer**

Plaintiff's claims arise under federal law, and each forum is equally suited to adjudicate them. *See Wolfram Alpha*, 490 F. Supp. 3d at 335 ("Because [p]laintiff pursues federal claims requiring interpretation of federal law, [t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims.") (citation and internal quotation marks omitted).

---

7 While the availability of witnesses may be "the most critical factor to examine under 28 U.S.C. § 1404(a)," *Treppel v. Reason*, 793 F. Supp. 2d 429, 438 (D.D.C. 2011), quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995), courts in the District of Columbia devalue this factor when the movant does not allege witnesses "may actually be unavailable for trial." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 33 & n.5 (D.D.C. 2008); *see also Trout Unltd.*, 944 F. Supp. at 16, citing 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISPRUDENCE AND RELATED MATTERS, § 3851 at 420–22 (2d ed. 1986).

Turning to the relative congestion of the courts, defendants argue that data regarding the median time intervals from filing to disposition of civil cases in the two districts "is neutral or, at best, only slightly moves the needle one way or another." Mot. at 9; *see* Admin. Off. of the U.S. Cts., Table C-5: U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending Dec. 31, 2025, at (2025), ("Time Intervals Table"), https://perma.cc/4NVV-MBG3. Plaintiff offers no competing metric and, in fact, makes few arguments concerning any of the public- or private-interest factors. Defendants' data shows that the median time to dispose of a civil case in the District of Columbia is one to two months shorter than in the Western District of Tennessee. *Id.* That disparity is greatest in cases requiring no court action, marginal in cases resolved before pretrial, and runs in the opposite direction for cases disposed of during or after pretrial proceedings. Specifically, civil cases disposed of during or after pretrial proceedings take roughly two years longer to resolve in the District of Columbia than in the Western District of Tennessee. There were insufficient trials in the Western District of Tennessee in 2025 to permit a comparison with this district for civil actions that proceeded to trial. *Id.*

Other courts in this district "have held that when statistics regarding relative congestion are mixed, this factor should be deemed as neutral." *Wolfram Alpha*, 490 F. Supp. 3d at 336, citing *McAfee, LLC v. U.S. Citizenship and Immigr. Servs.*, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (finding the relative congestion factor neutral where the District of Columbia had longer wait times for cases that reached later litigation stages, slightly longer processing time for cases resolved short of trial, but the overall case load was significantly lower than the Central District of California, the transferee district). This factor therefore weighs, at most, marginally against transfer.

Other courts in this district considering similar actions have deemed the interest in deciding local controversies "the public interest factor of most importance." *Bourdon*, 235 F. Supp. 3d at 308. Those courts have concluded that "the district in which the relevant USCIS Field Office is located is 'better positioned' to be involved in 'dictating the priorities of a local USCIS office' and 'may have a superior interest in doing so.'" *Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 105 (D.D.C. 2010), quoting *Aftab*, 597 F. Supp. 2d at 84. Plaintiff resides in the Western District of Tennessee, and his petitions were adjudicated and denied by the USCIS field office located in that district. This controversy also stems from plaintiff's efforts to transfer to a university located in that district and from the advice he received from an attorney practicing there. These connections are not merely incidental; they demonstrate a substantial local interest in the resolution of this dispute. The interest in deciding local controversies therefore weighs heavily in favor of transfer. Because the remaining factors are either neutral or weigh only marginally against transfer, this factor tips the public-interest analysis generally in favor of transfer.

In sum, five of the six private-interest factors, as well as the public-interest factor most relevant to this controversy, favor transfer. Even if venue is proper in the District of Columbia, the interests of justice favor transferring this action to the Western District of Tennessee under 28 U.S.C. § 1404(a).

## CONCLUSION

Because the balance of the interests of justice weighs in favor of transferring plaintiff's claims to the Western District of Tennessee, the motion to transfer pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. In light of the transfer, the Court declines to address defendants' motion to dismiss.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: September 15, 2026